McGREGOR W. SCOTT
United States Attorney
KIMBERLY A. SANCHEZ
ROSS PEARSON
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL GARCIA, AKA "JOKER,"<br><br>Defendant. | CASE NO.  1:17-CR-00135-LJO-SKO<br><br>PLEA AGREEMENT<br><br>DATE:<br>TIME:<br>COURT: Hon. Lawrence J. O'Neill |

## I.     **INTRODUCTION**

A.     **Scope of Agreement**

The Indictment in this case charges the defendant with a violation of 21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to Distribute and Possess With Intent to Distribute Methamphetamine (Count One); 21 U.S.C. § 841(a)(1) – Distribution of Methamphetamine (Count Nine); and 21 U.S.C. § 841(a)(1) – Possession With Intent to Distribute Methamphetamine (Count Fourteen).  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.** **Court Not a Party**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.    **DEFENDANT'S OBLIGATIONS**

**A.** **Guilty Plea**

The defendant will plead guilty to Count One – Conspiracy to Distribute and Possess With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

**B.     Sentencing Recommendation**

The defendant and his counsel may recommend whatever sentence they deem appropriate.

**C.     Special Assessment**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**D.     Defendant's Violation of Plea Agreement or Withdrawal of Plea**

If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement.  The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph,

notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

## III.      THE GOVERNMENT'S OBLIGATIONS

### A.      Dismissals

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.D (Defendant's Violation of Plea Agreement), and VII.B (Waiver of Appeal) herein.

### B.      Recommendations

#### 1.      Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense, including the application of the mandatory statutory minimum term, as determined by the Court. The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

#### 2.      Role in the Offense

The government will recommend a two-level reduction under U.S.S.G. § 3B1.2(b) for minor participant.

3.    <u>Acceptance of responsibility</u>

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

C.    **Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

IV.    **ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

As to Count One, Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846:

1.    Between on or about January 1, 2017, and May 10, 2017, there was an agreement between two or more persons to distribute and to possess with intent to distribute methamphetamine;

2.    The defendant joined in the agreement with the intent to further its unlawful object or purpose; and

3.    It was reasonably foreseeable to the defendant that the conspiracy involved 50 grams or more of methamphetamine or 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine.

The defendant fully understands the nature and elements of the crimes charged in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.   MAXIMUM SENTENCE

### A.   Maximum penalty

The maximum sentence that the Court can impose is incarceration for life, a fine of $10,000,000, a term of supervised release of at least five years and up to life and a special assessment of $100. The charge to which defendant is pleading guilty carries a ten-year mandatory minimum sentence, absent a motion by the government for reduction pursuant to 18 U.S.C. § 3553(e). In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

### B.   Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to five years of additional imprisonment.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B.   Sentencing Recommendation

The defendant is free to recommend to the Court whatever sentence he believes is appropriate

under 18 U.S.C. § 3553(a).  The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense, including the application of the mandatory statutory minimum term, as determined by the Court.

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

### B.    Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence.  The defendant agrees as part of his plea/pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea Agreement) herein.

### C.     Impact of Plea on Defendant's Immigration Status

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty.  The defendant and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed.  Indeed, because defendant is pleading guilty to conspiracy to distribute and to possess with intent to distribute controlled substances, removal is presumptively mandatory.  Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

### VIII.     ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

### IX.     APPROVALS AND SIGNATURES

#### A.     Defense Counsel

I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 1/4/19

ALEXANDER MARTIN
Counsel for Defendant

PLEA AGREEMENT

8

**B.**   **Defendant**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 1/4/19

DANIEL GARCIA, Defendant

**C.**   **Attorney for the United States**

I accept and agree to this plea agreement on behalf of the government.

Dated: 1/7/19

McGREGOR W. SCOTT
United States Attorney

By:

KIMBERLY A. SANCHEZ
ROSS PEARSON
Assistant United States Attorney

1

2

**EXHIBIT "A"**
**Factual Basis for Plea**

3    If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt, and the defendant agrees that these facts are true:

4

5

6    Between on or about January 1, 2017, and continuing through May 10, 2017, in the County of Merced, State and Eastern District of California, defendant DANIEL GARCIA knowingly conspired and agreed with other co-conspirators to distribute and possess with intent to distribute methamphetamine. Specifically, GARCIA conspired to distribute at least 2.7 kilograms of methamphetamine, knowing that the substance he was conspiring to distribute was methamphetamine and that methamphetamine is a controlled substance.

7

8    A.   <u>April 24, 2017–April 26, 2017: a CHS Buys 453 Grams Meth from Robert GUTHRIE, which GARCIA Supplied.</u>

9

10

11

12    On April 24, 2017, Robert Guthrie called Prado Corona to ask if they were on for Wednesday. Corona told Guthrie yes for the "AR" and the other "thing." Guthrie responded, asking Corona how much for the "P," and Corona told him his "source" wanted "35." In context, Guthrie was asking Corona how much for a pound of methamphetamine, and Corona told Guthrie his source wanted $3,500.

13

14

15

16    The morning of April 26 at approximately 9:00 a.m., agents intercepted a call in Spanish from Corona to Hurtado in which Corona told Hurtado he needed a "complete one," referring to a complete pound of methamphetamine. Hurtado asked Corona if he already had the "28," referring to $2,800, the price for a pound of methamphetamine. Corona said he did. Hurtado then told Corona he would start driving to Corona's location, and the two discussed how long it would take Hurtado to get to the location.

17

18

19

20

21    Approximately forty minutes later, Hurtado called Corona again and asked if he should be on his way. Corona said "yes," and told Hurtado that he should have the money by the time Hurtado arrived. After the call ended, Corona drove to Bank of the West, went into the bank, came back out, then drove back to his residence. Shortly before 10:00 a.m., Corona called Hurtado back and told him there was a change of plans, because he did not want the probation department to discover them at his residence. Hurtado asked Corona if he wanted to "grab the paper" and meet where they met on a previous day. The two discussed a few other meeting locations, and ultimately settled on the Fruit Stand Market on Yosemite and Geer Road in Stanislaus County.

22

23

24

25

26    At approximately 10:27 a.m., Hurtado called Corona and told Corona that he was sending his "homie" to deliver to Corona and that the "homie" was going to call Corona. A few minutes later, a man who identified himself as "Joker" (later identified as GARCIA) called Corona and told Corona "we" will he would be there in five minutes. At approximately 10:39 p.m., officers saw a Toyota 4Runner enter the parking lot of the Fruit Stand Market and park next to Corona's truck. Agents could see two males in the 4Runner, but could not identify them.  Corona got out of his truck, got in the back of the 4Runner, then two- to three-minutes later got out and back in his truck.

27

28    The 4Runner left and surveillance followed it back to Oakdale, California. The 4Runner drove to a residence and parked in the driveway. Ten minutes later, surveillance saw Hurtado drive up to the residence and meet with the occupants of the 4Runner.  The occupants were not identified.  Hurtado was

PLEA AGREEMENT                                    A-1

1   driving the same vehicle agents had seen him driving at the April 3 transaction.

2       Meanwhile, right after Corona met with GARCIA, he sent a text to Guthrie saying, "got it." Just
3   before 11 a.m., agents saw Corona drive to an apartment in Merced, park in the parking lot, and go
    inside. Guthrie arrived at the same parking lot a short time later and sent a text to Corona to say "here."
4   Corona came out of the apartment and met with Guthrie at the trunk of Guthrie's car. Due to the
    positioning, officers could not see what Guthrie and Corona did at the rear of the vehicle.
5
        Later that day, Guthrie met with CHS#1 and sold him four firearms and 435 grams of meth for a
6   total of $9,700.

7   **B.    May 10, 2017: Officers Find 5 Pounds of Meth During a Search of GARCIA's
            Residence**
8
        On May 10, 2017, at approximately 6:00 a.m., agents served a search warrant at GARCIA's
9   residence.  In a bedroom in the residence, they found 7 clear plastic bags containing a total of 5.406
10  pounds of methamphetamine (in a locked container) and $47,771 in cash (in a locked container).  In the
    kitchen, agents found a plastic bag containing .504 pounds of methamphetamine, another baggie with 28
11  grams of heroin, acetone (used in the manufacture/processing of meth) and two digital scales.  There
    was also what appeared to be a small conversion lab in the kitchen.  In the entry way, agents found 117
12  grams of cocaine (in locked box in front entry way); and a Ruger revolver (in a desk drawer near the
    entryway).
13

14

15

16  Dated:  1/4/19                              Daniel Garcia
17                                              DANIEL GARCIA, Defendant

18

19

20

21

22

23

24

25

26

27

28